# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

DANIEL J. SCOTT,

        Plaintiff,

vs.

IOWA STATE GOVERNOR CULVER,
UNIVERSITY OF IOWA HOSPITAL,
KEN CANNON, STATE OF IOWA,
SALLY TITUS, JASON SMITH, BRAD
WITTROCK, JAN JOHNSON, MARY
BENSON, MELISSA COPE, JENNIFER
MECKLEM, BRYON KELLY, LARRY
CHAMBERS, CINDY OLSON,
HEATHER JOHNSON, BRENT
KOEDAM, and RON SPEARS,

        Defendants.

No. C08-4018-LRR

INITIAL REVIEW ORDER

---

This matter is before the court on Plaintiff's application to proceed in forma pauperis. Plaintiff filed such application on February 25, 2008. Along with his application to proceed in forma pauperis, Plaintiff submitted a complaint pursuant to 42 U.S.C. § 1983 and an application for appointment of counsel. On March 19, 2008, Plaintiff supplemented his complaint.

## I. IN FORMA PAUPERIS UNDER 28 U.S.C. § 1915

Plaintiff currently is a patient at the Civil Commitment Unit for Sexual Offenders ("CCUSO") in Cherokee, Iowa. A patient is not a prisoner within the meaning of the Prison Litigation Reform Act ("PLRA"). *See Kolocotronis v. Morgan*, 247 F.3d 726 (8th Cir. 2001) (concluding a mental patient is not a prisoner within the meaning of the PLRA and, therefore, is not subject to inmate-accounting procedures or three strikes rule); *see also Page v. Torrey*, 201 F.3d 1136 (9th Cir. 2000) (finding petitioner who was civilly committed under California's Sexually Violent Predators Act was not a "prisoner" subject

to PLRA's financial reporting and exhaustion requirements).  Nonetheless, it is appropriate for the court to apply 28 U.S.C. § 1915(a)(1) because this subsection has been applied by courts in their review of applications of non-prisoners as well as prisoners.

A court may permit a party to proceed with litigation in forma pauperis, that is, "without prepayment of fees or security therefor," if the party submits an affidavit that shows the inability "to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). When ruling on a 28 U.S.C. § 1915(a)(1) application, three general principles apply. First, proceeding in forma pauperis in a civil case is a privilege or favor granted by the government. *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 198, 113 S. Ct. 716, 121 L. Ed. 2d 656 (1993).  Second, the statute reads that the court "may authorize the commencement" of an action. 28 U.S.C. § 1915(a)(1). The grant, denial, or other decision concerning an in forma pauperis application requires the court to exercise discretion. *Denton v. Hernandez*, 504 U.S. 25, 31, 112 S. Ct. 1728, 118 L. Ed. 2d 340 (1992); *see also Lee v. McDonald's Corp.*, 231 F.3d 456, 458 (8th Cir. 2000) (explaining the purpose of 28 U.S.C. § 1915 and stating the decision of whether to grant or deny in forma pauperis status under 28 U.S.C. § 1915 is discretionary). Third, the ability to pay does not require that plaintiffs contribute their "last dollar" or "make themselves and their dependents wholly destitute." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339, 69 S. Ct. 85, 93 L. Ed. 43 (1948).

Here, Plaintiff states in his application to proceed in forma pauperis that he has not received money in the last twelve months from any type of self employment, money in the form of rent payments, interest, dividends, retirement or annuity, gifts, inheritances, court award or settlement or money from any other source.  Further, Plaintiff states that he does not own any savings or checking accounts or other valuable property.  Plaintiff also states that he makes some money, that is, $16.00, from his level of treatment.  Given the statements that Plaintiff made in his application to proceed in forma pauperis, the court is satisfied that Plaintiff's allegation of poverty is true. *See Lee*, 231 F.3d at 458-59 (stating

a court must determine whether the "allegation of poverty is untrue" when it assesses the affidavit supporting an application to proceed in forma pauperis); *see also Potnick v. Eastern State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) (concluding the requirements of 28 U.S.C. § 1915 were met because plaintiff received public assistance income of $222.00 per month, had checking account balance of less than $60.00, owned an automobile on which he owed $3600.00, and had other debts totaling $10,000.00); *cf. Marceaux v. Democratic Party*, 79 Fed. Appx. 185, 186, 2003 U.S. App. LEXIS 22312, 2003 WL 22455419 (6th Cir. 2003) (concluding the district court did not abuse its discretion when it determined plaintiff could afford to pay the filing fee without undue hardship because he has no room and board expenses, owns a car, and spends the $250.00 earned each month selling plasma on completely discretionary items). Accordingly, Plaintiff's application to proceed in forma pauperis shall be granted. *See* 28 U.S.C. § 1915. The Clerk of Court shall file the complaint without the prepayment of the filing fee.

Although it agrees that the granting of in forma pauperis status is appropriate in this case, the court finds that requiring patients to submit partial payments or installment payments of the filing fee is permissible and desirable.

> The ordering of a partial payment or an installment payment for court fees fits within the [language of 28 U.S.C. § 1915. Subsection (a) of 28 U.S.C. § 1915] does not say that upon granting in forma pauper status, court fees need not be paid or that they are remitted or otherwise waived. Instead, [subsection (a)] merely authorizes commencement 'without prepayment' if the applicant 'is unable to pay such fees.' This conveys the sense that the court may authorize the filing of an action without prepayment and look to cash flow and assets in order to secure post-payment.[1]

---

[1] Prior to the enactment of the [PLRA], courts had, in large part, determined that they had the discretion to require partial payment of the filing fees by prisoners. *Byran v. Johnson*, 821 F.2d 455 (7th Cir. 1987) (collecting cases). Partial payment was said to help ensure that prisoners had an economic incentive to police their own actions, just as

(continued...)

*White ex rel. Diggs v. Barnhart*, 2002 U.S. Dist. LEXIS 14528, *5, 2002 WL 1760980 (M.D. N.C. 2002).  Like an inmate at a prison, a patient with a steady income stream may not be able to make full payment at a particular time but may have the ability to pay over a period of time.  Where patients have accounts and are given an allowance each week, the court deems it appropriate to collect partial payments or installment payments of the filing fee.

From Plaintiff's pleadings and from additional information obtained by the court, it is clear that patients at the CCUSO have accounts which are managed by staff, and all of the patients at the CCUSO are given an allowance each week.  Because staff at the CCUSO are able to control the accounts of patients, the court believes it is appropriate to collect a filing fee based on or modeled after the system laid out in 28 U.S.C. § 1915(b).  Although he is not required to submit an initial partial filing fee, Plaintiff shall submit monthly payments of 20 percent of the preceding month's income credited to his account until the $350.00 filing fee is paid.  *Cf.* 28 U.S.C. § 1915(b)(2).  The CCUSO shall forward payments from Plaintiff's account to the Clerk of Court each time the amount in the account exceeds $10 until the filing fee is paid.  *Id.*

## II. COMPLAINT UNDER 42 U.S.C. § 1983

### A.  Standard of Review

A pro se complaint must be liberally construed.  *See Hughes v. Rowe*, 449 U.S. 5, 9, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.

---

[1](…continued)
the non-imprisoned public must do.  This rationale applies to all members of the public, in all their diverse economic situations.  . . .  With the enactment of the [PLRA], Congress now requires partial payment of the filing fees by prisoners and has established a uniform collection methodology for both prepayment and post–payment of the fees.  *See* 28 U.S.C. § 1915(b).  There has been some thought that, if not constitutional law, then at least elementary fairness requires that all parties applying for [in forma pauperis] status be subject to possible partial payment of the filing fees, and not just prisoners.  *See Byran*, 821 F.2d at 459 . . . .

Ct. 594, 30 L. Ed. 2d 652 (1972) (per curiam); *Smith v. St. Bernards Reg'l Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994). A court, however, can dismiss at any time a complaint filed in forma pauperis if the complaint is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b)(1). A claim is "frivolous" if it "lacks an arguable basis in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); *accord Cokeley v. Endell*, 27 F.3d 331, 332 (8th Cir. 1994). Accordingly, a court may review the complaint and dismiss sua sponte those claims that are premised on meritless legal theories or that clearly lack any factual basis. *See id.*; *see also Denton v. Hernandez*, 504 U.S. 25, 27, 112 S. Ct. 1728, 118 L. Ed. 2d 340 (1992).

### *B. Overview of Civil Rights Claims Under 42 U.S.C. § 1983*

Title 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). However, 42 U.S.C. § 1983 provides no substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S. Ct. 1905, 60 L. Ed. 2d 508 (1979). "One cannot go into court and claim a 'violation of [42 U.S.C.] § 1983' — for [42 U.S.C.] § 1983 by itself does not protect anyone against anything." *Chapman*,

441 U.S. at 617. Rather, 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (42 U.S.C. § 1983 "merely provides a method for vindicating federal rights elsewhere conferred."); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980) ("Constitution and laws" means 42 U.S.C. § 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.). To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).

### C. Claims Asserted by Plaintiff

In his complaint and supplement, Plaintiff argues Defendants violated his rights during three periods: (1) November 21, 2007 to approximately January 11, 2008; (2) January 12, 2008 to January 18, 2008; and (3) February 8, 2008 to March 15, 2008. Regarding the first period, Plaintiff alleges that Defendant Mary Benson examined his scrotum and determined he had a boil. Plaintiff also alleges that, although he sought further treatment because his scrotum was hard and puss was present, Defendant Mary Benson did not examine him. Concerning the second period, Plaintiff alleges, in pertinent part, the following:

> (1) on January 12, 2008, he began to feel sick in the early afternoon, he decided to go to bed and he did not want anyone to fuss over him or staff to take his vitals and such;
>
> (2) on January 13, 2008, he spent the day in bed because he was sick, he agreed to have a Psychiatric Security Specialist take his vitals, she determined that he had a temperature, they discussed the problems he was experiencing with his scrotum and the possibility of an infection, she contacted Defendant Bryon Kelly, who is a Treatment Program Supervisor, Defendant Bryon Kelly insisted on examining him, Defendant

Bryon Kelly believed that he had two boils, Defendant Bryon Kelly wanted Defendant Jan Johnson, who is a nurse, to examine him, he became angry, he refused to have Defendant Jan Johnson examine him because he previously witnessed her negligence, and he decided to wait until morning to have Defendant Mary Benson, who is a nurse, examine him;

(3) on January 14, 2008, he became upset when Defendant Mary Benson failed to show up, he went back to bed, he became angrier when Defendant Melissa Cope, who is a Treatment Program Supervisor, came to his room around noon with Defendant Jan Johnson, he refused to allow Defendant Jan Johnson examine him, Psychiatric Security Specialist staff continued to monitor his vitals, he became more upset because his pain increased, he agreed to have Defendant Jan Johnson examine him after supper, Defendant Jan Johnson and Defendant Bryon Kelly examined him and they determined that he should be taken to the hospital in Cherokee, he became upset because he did not think that the CCUSO staff were listening to him, Defendant Bryon Kelly cuffed him and transported him to the hospital in Cherokee, he became more upset at the hospital in Cherokee because he had to wait to see a doctor and Defendant Bryon Kelly refused to take his cuffs off without direction from a doctor or allow him to take his coat off even though he had a fever, he indicated that he wanted to go back to the CCUSO so that he could be more comfortable, he refused to let anyone draw blood or examine him until a doctor showed up, a doctor examined him nearly two hours after he arrived, the doctor had his cuffs removed, a paramedic unsuccessfully attempted to draw his blood while he spoke with the doctor, he became upset because the paramedic did not listen to him, he told the paramedic to stop, a nurse successfully drew his blood, the doctor ordered morphine to control his pain, the doctor admitted him and arranged to have him meet other doctors;

(4) on January 15, 2008, another doctor examined him in the morning and decided that he should be transferred to the university hospital in Iowa City, he left for Iowa City around noon and arrived in Iowa City around 4:30 p.m., he became upset because he did not receive a room and hospital staff

asked the CCUSO staff questions rather than him, staff from the university hospital completed an ultrasound on him, Defendant Heather Johnson, Defendant Ron Spears and Defendant Cindy Olson, who are Psychiatric Security Specialists, discussed his medical condition and he became upset because he did not like how Defendant Heather Johnson interrupted his conversation with Defendant Cindy Olson, staff at the emergency room in the university hospital upset him because they asked the CCUSO staff questions regarding the security of the university hospital and the payment for medical treatment provided by the university hospital, doctors examined and treated him throughout such period of questioning, doctors gave him morphine and antibiotic and then performed surgery on him;

(5) on January 16, 2008, he had a bad morning, he did not remember the events that took place, he learned that he needed to be restrained during the night, Defendant Cindy Olson explained what occurred the night before, he spoke with a doctor, the doctor ordered his restraints to be removed and indicated that he would be moved within the university hospital, he spoke with Defendant Cindy Olson about the events that occurred prior to and just after his surgery, doctors continued to treat the pain he experienced in his pelvis area and lower back, nurses moved him to another room, the staff did all they could to make him comfortable throughout the day, he calmed down, he spoke with Defendant Heather Johnson about the things she witnessed the previous night, he talked about calling one of the staff a "queer" and explained that he believed the person was his ex-neighbor and that he does not like him, he called family members around 8:00 p.m.;

(6) on January 17, 2008, he saw several doctors, they treated him, changed his dressing and decided to discharge him, this upset him because he did not want to go back to the CCUSO and he was not ready to be released, he withdrew as much as possible and refused to take his medication, Defendant Jennifer Mecklem, who is a Treatment Program Supervisor, indicated that he refused treatment and refused to be discharged, Defendant Cindy Olson allowed him to call his family, a nurse removed his catheter and took out his intravenous tube around

2:00 p.m., he realized before being discharged that one of the staff at the university hospital who was asking questions about security could be related to a victim that is associated with his criminal conviction and civil commitment, he believed that such staff member was responsible for some of the trouble that occurred in the emergency room, he withdrew more, Defendant Cindy Olson and Defendant Heather Johnson tried to determine how to transport him back to the CCUSO and they called Defendant Ron Spears at the hotel, he agreed to being placed in handcuffs without a belly chain and Defendant Cindy Olson and Defendant Heather Johnson placed him in handcuffs, he sat in a wheelchair, he picked up and completed his discharge papers around 2:30 p.m., he waited in the emergency room for an ambulance that the CCUSO arranged to pick him up, Defendant Cindy Olson arranged to have him lay on a gurney and he waited in the hallway, Defendant Cindy Olson attempted to get him pain medication but staff at the university hospital did not provide any pain medication because he had already been discharged, he waited in the hallway for an hour and he left the university hospital at 8:30 p.m.; and

(7) on January 18, 2008, he arrived at the CCUSO around 12:30 a.m., he took a shower, made up his bed and fell asleep around 4:00 a.m., he met with Defendant Jason Smith and others around 3:00 p.m., he agreed to let Defendant Jan Johnson change his dressings throughout the weekend and to meet next week to work on other issues, Defendant Larry Chambers, who is a Treatment Program Supervisor, served him with a behavior report in the evening.

With respect to the third period, Plaintiff contends that Defendant Larry Chambers refused to provide him with sanitary conditions and proper facilities even though he is disabled.

In the relief portion of his complaint, Plaintiff asks: (1) to be reinstated to level 4 and to follow through with his application to level 5; (2) to receive all level pay, allowances and interest from January 28, 2008 to present; and (3) to be awarded compensatory damages, punitive damages, court costs, attorneys fees and further relief as the court deems appropriate.

### D. Review of Plaintiff's Claims

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII. Accordingly, the treatment a prisoner receives in prison and the conditions of his confinement are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 831-32, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994); *Helling v. McKinney*, 509 U.S. 25, 31-32, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993). In its prohibition of cruel and unusual punishments, the Eighth Amendment places a duty on jail and prison officials to provide inmates with necessary medical attention. *Wilson v. Seiter*, 501 U.S. 294, 303, 111 S. Ct. 2321, 2326-27, 115 L. Ed. 2d 271 (1991); *Weaver v. Clark*, 45 F.3d 1253, 1255 (8th Cir. 1995). In this context, a prison official violates the Eighth Amendment by being deliberately indifferent either to a prisoner's existing serious medical needs or to conditions posing a substantial risk of serious future harm. *Weaver*, 45 F.3d at 1255 (comparing *Estelle v. Gamble*, 429 U.S. 97, 104-105, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976) (existing medical needs) with *Helling*, 509 U.S. at 33-34, 113 S. Ct. at 2480-81 (risk of future harm to health)).

An Eighth Amendment violation occurs only when two requirements are met: (1) "the deprivation alleged must be, objectively, 'sufficiently serious,'" and (2) the "prison official must be, as a subjective state of mind, deliberately indifferent to the prisoner's health or safety." *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (citations omitted); *see also Helling*, 509 U.S. at 32; *Estelle*, 429 U.S. at 106; *Jolly v. Knudson*, 205 F.3d 1094, 1096 (8th Cir. 2000); *Williams v. Delo*, 49 F.3d 442, 445-47 (8th Cir. 1995). In the context of a prisoner's claim of inadequate medical care, society does not expect that prisoners will have unqualified access to health care. *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). Consequently, "deliberate indifference to medical needs amounts to an Eighth Amendment

violation only if those needs are 'serious.'" *Id*. (citing *Estelle*, 429 U.S. at 103-04); *see also Wilson*, 501 U.S. at 298.

To constitute an objectively serious medical need or a deprivation of that need, the need or the deprivation either must be supported by medical evidence or must be so obvious that a layperson would recognize the need for a doctor's attention. *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995); *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991); *see, e.g., Beyerbach*, 49 F.3d at 1326-27 (insufficient evidence of objective seriousness when there is no medical evidence that delay in treatment produced any harm); *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (insufficient evidence of serious medical need when the medical need claimed is based on bare assertion of inmate). The objective portion of the deliberate indifference standard requires a showing of verifiable medical evidence that a defendant ignored an acute or escalating situation, or that delays adversely affected the prognosis given the type of medical condition present in the case. *See Dulany v. Carnahan*, 132 F.3d 1234, 1243 (8th Cir. 1997) (citing *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997), and *Beyerbach*, 49 F.3d at 1326); *see also O'Neil v. White*, 221 F.3d 1343, 1343 (8th Cir. 2000) (citing *Crowley*, 109 F.3d at 502).

To meet the second requirement, the "subjective" component of an Eighth Amendment claim, a prison or jail official must have a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 297-303; *Hudson*, 503 U.S. at 8. In a medical needs claim, that state of mind is one of "deliberate indifference" to inmate health. *Farmer*, 511 U.S. at 838-39; *Helling*, 509 U.S. at 32; *Wilson*, 501 U.S. at 302-303; *Estelle*, 429 U.S. at 106. Regarding the meaning of the term "deliberate indifference," the United States Supreme Court has explained:

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth

11

> Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

*Farmer*, 511 U.S. at 837. Thus, to establish the second requirement, "deliberate indifference," a plaintiff must assert facts showing the defendant actually knew of and disregarded a substantial risk of serious harm to his or her health or safety. *Id.*, 511 U.S. at 840-47; *Helling*, 509 U.S. at 32.

Medical treatment that displays "deliberate indifference" violates the Eighth Amendment "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05; *see also Foulks v. Cole County*, 991 F.2d 454, 456-57 (8th Cir. 1993). Negligent acts by prison officials, however, are not actionable under 42 U.S.C. section 1983. *See Davidson v. Cannon*, 474 U.S. 344, 347-48, 106 S. Ct. 668, 670, 88 L. Ed. 2d 677 (1986); *Daniels v. Williams*, 474 U.S. 327, 333-34, 106 S. Ct. 662, 666, 88 L. Ed. 2d 662 (1986); *Estelle*, 429 U.S. at 106; *Taylor v. Bowers*, 966 F.2d 417, 421 (8th Cir. 1992). Further, an inmate's disagreement or displeasure with his course of medical treatment is not actionable under 42 U.S.C. § 1983. *Dulany*, 132 F.3d at 1239-44 (8th Cir. 1997); *Bellecourt v. United States*, 994 F.2d 427, 431 (8th Cir. 1993); *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993) (per curiam); *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir. 1991); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990); *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990).

Here, Plaintiff disapproves of his course of medical treatment from January 12, 2008 to January 18, 2008. Stated differently, Plaintiff dislikes the fact that he could not choose the person who would examine or treat him and he disagrees with the course of treatment prescribed. Indeed, on many occasions, he refused treatment because of such disagreement or displeasure. Based on the facts as pleaded, Plaintiff fails to state a claim of an Eighth Amendment medical needs violation. The facts alleged do not establish that

Plaintiff had a serious medical need and Defendants actually knew of and deliberately disregarded his serious medical need from January 12, 2008 to January 18, 2008. Because the facts of medical attention presented by Plaintiff belie any assertion of deliberate indifference by Defendants, Plaintiff fails to state a claim on which relief may be granted. *Cf. Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002) (dismissing case as frivolous because "[n]either differences of opinion nor medical malpractice state an actionable Constitutional violation"); *Williams v. Kelso*, 201 F.3d 1060, 1065 (8th Cir. 2000) ("[T]he law requires that [the] plaintiff make a showing of subjective awareness by the prison officials of a "substantial risk" of "serious harm" . . . in order to establish [a viable] cause of action."). For failure to state a 42 U.S.C. § 1983 claim with an arguable basis in fact or in law, Plaintiff's deliberate indifference to serious medical needs claim for the second period shall be dismissed. *See* 42 U.S.C. § 1997e(c); *see also* 28 U.S.C. § 1915A(b)(1); *Denton*, 504 U.S. at 26-27; *Neitzke*, 490 U.S. at 325-27; *Cokeley*, 27 F.3d at 332.

Having concluded that Plaintiff failed to state a viable claim which relates to the second period, the court shall dismiss from the instant action the following: Defendant Bryon Kelly, Defendant Jan Johnson, Defendant Heather Johnson, Defendant Melissa Cope, Defendant Jennifer Mecklem, Defendant Ron Spears, Defendant Cindy Olson, Defendant Jason Smith and Defendant University of Iowa Hospital. Further, dismissal is warranted because the complaint does not include specific allegations against Defendant State of Iowa, Defendant Iowa State Governor Culver, Defendant Ken Cannon, Defendant Sally Titus, Defendant Brad Wittrock and Defendant Brent Koedam; the instant action under 42 U.S.C. § 1983 is not cognizable because Plaintiff does not allege that Defendant State of Iowa, Defendant Iowa State Governor Culver, Defendant Ken Cannon, Defendant Sally Titus, Defendant Brad Wittrock and Defendant Brent Koedam were personally involved with or had direct responsibility for the incidents related to the other two

periods. *See Gully v. Maynard*, 218 Fed. Appx. 551, 552 (8th Cir. 2007) (citing *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985)).

Moreover, Plaintiff is unable to undermine or call into question his civil commitment under Iowa Code chapter 229A, Commitment of Sexually Violent Predators, and the court is unable to decide treatment issues. A plaintiff, through an action under 42 U.S.C. § 1983, may not cast doubt on the validity of his confinement unless his judgment of commitment has first been invalidated or overturned in any state proceedings or through an application for a writ of habeas corpus which is brought after fully exhausting state court remedies. *Cf. Harris v. Beadle*, 2004 U.S. Dist. LEXIS 4117, *4-9, 2004 WL 524464 (D. Neb. 2004). Where success of an action means a civil commitment is unlawful, a plaintiff must first challenge his civil commitment in state court, *see, e.g.,* Iowa Code section 229A.8 (providing annual examinations and review of discharge or transitional release petitions by persons committed), or bring an application for a writ of habeas corpus in this court after exhausting his remedies in state court, *see* 28 U.S.C. § 2254 (requiring exhaustion of remedies available to those in state custody). Thus, to the extent that Plaintiff is asking the court to determine whether his civil commitment is lawful and seeking damages for an unlawful commitment, Plaintiff's complaint shall be dismissed. *See* 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b)(1); *Denton*, 504 U.S. at 26-27; *Neitzke*, 490 U.S. at 325-27; *Cokeley*, 27 F.3d at 332; *cf. Harris v. Beadle*, 2004 U.S. Dist. LEXIS 4117, *4-9, 2004 WL 524464 (D. Neb. 2004) (applying *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) to bar action where plaintiff sought damages for proceedings related to civil commitment). Similarly, the court is unable to direct where a patient is to be placed within the CCUSO. *Cf. Meachum v. Fano*, 427 U.S. 215, 225, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976) (decision of where to house inmates is at the core of prison administrator's expertise and discretionary transfer of a prisoner from one institution to a substantially less agreeable prison does not violate the Constitution); *Lyon v. Farrier*,

727 F.2d 766, 768-69 (8th Cir. 1984) (stating that prisoners have no constitutional right to be housed in the prison of their choice and placement of an individual in a particular prison is within the discretion of prison officials).

With respect to the first and third time period, only Defendant Mary Benson and Defendant Larry Chambers remain in the instant action, and the court is unable to determine as a matter of law whether Plaintiff's claims are frivolous within the meaning of 28 U.S.C. § 1915(e) and/or 28 U.S.C. § 1915A(b). Consequently, the court is of the opinion that the matter is best addressed after receipt of an answer and/or any dispositive motion deemed appropriate. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 1831, 104 L. Ed. 2d 338 (1989); *Money v. Moore*, 877 F.2d 9, 10 (8th Cir. 1989). The Clerk of Court shall serve the complaint on Defendant Mary Benson and Defendant Larry Chambers and mail a copy of the complaint to the Iowa Attorney General without the prepayment of fees and costs. A copy of this order shall accompany the documents being served. The Iowa Attorney General shall notify the court immediately if he lacks the consent of Defendant Mary Benson and Defendant Larry Chambers to appear generally on their behalf and submit to the jurisdiction of the court. Defendants shall file an answer or other dispositive motion by no later than July 25, 2008.

### III. APPLICATION FOR APPOINTMENT OF COUNSEL

With respect to Plaintiff's application for appointment of counsel, the court does not believe that the assistance of counsel is warranted at this time. *See Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996) (setting forth factors to be considered for appointment of counsel in civil case); *Abdullah v. Gunter*, 949 F.2d 1032, 1035 (8th Cir. 1991) (same); *Wiggins v. Sargent*, 753 F.2d 663, 668 (8th Cir. 1985) (stating an indigent litigant enjoys neither a statutory nor a constitutional right to have counsel appointed in a civil case). Accordingly, Plaintiff's application for appointment of counsel shall be denied.

**IT IS THEREFORE ORDERED**:

1) In forma pauperis status is granted.

2) The Clerk of Court is directed to file the complaint without the prepayment of the filing fee.

3) Plaintiff is directed to submit monthly payments of 20 percent of the preceding month's income credited to his account until the $350.00 filing fee is paid.

4) The CCUSO is directed to forward payments from Plaintiff's account to the Clerk of Court each time the amount in the account exceeds $10 until the filing fee is paid.

5) Plaintiff's claim relating to the period from January 12, 2008 to January 18, 2008 is dismissed as frivolous. Except for Defendant Mary Benson and Defendant Larry Chambers, all Defendants are dismissed from the instant case.

6) The Clerk of Court is directed to serve the complaint on Defendant Mary Benson and Defendant Larry Chambers and to mail a copy of the complaint to the Iowa Attorney General without the prepayment of fees and costs. A copy of this order is to accompany the documents being served.

7) The Iowa Attorney General is directed to notify the court immediately if he lacks the consent of Defendant Mary Benson and Defendant Larry Chambers to appear generally on their behalf and submit to the jurisdiction of the court.

8) Defendant Mary Benson and Defendant Larry Chambers are directed to file an answer or other dispositive motion by no later than July 25, 2008.

9) Plaintiff's application for appointment of counsel is denied.

**DATED** this 27th day of June, 2008.


LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

TO:   **ADMINISTRATOR**
      **Civil Commitment Unit for Sexual Offenders**
      **Cherokee Mental Health Institute**
      **1251 West Cedar Loop**
      **Box 6**
      **Cherokee, Iowa 51012**

## NOTICE OF COLLECTION OF FILING FEE

You are hereby given notice that Daniel J. Scott, a patient at your facility, has filed the following lawsuit in the United States District Court for the Northern District of Iowa: *Scott v. Culver, et al.*, Case No. C08-4018-LRR. The patient was granted in forma pauperis status pursuant to 28 U.S.C. § 1915. The court has not assessed an initial partial filing fee. *Cf.* 28 U.S.C. § 1915(b)(1). Nonetheless, the patient is required to make monthly payments of 20 percent of the preceding month's income credited to his account. *Cf.* 28 U.S.C. § 1915(b)(2). As the agency having control over the patient's account, you are required to forward payments from the account to the Clerk of Court each time the amount in the account exceeds $10.00 until the $350.00 filing fee is paid. *Id.* Please make the appropriate arrangements to have these fees deducted and sent to the court as instructed.

s/Karen S Yorgensen, Deputy

Robert L. Phelps
U.S. District Court Clerk
Northern District of Iowa

**NOTICE OF LAWSUIT**
**and REQUEST FOR**
**WAIVER OF SERVICE OF SUMMONS**

<u>TO THE NAMED DEFENDANT(S) IN THE FOLLOWING CAPTIONED ACTION:</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| DANIEL J. SCOTT, | | |
| Plaintiff, | | No. C08-4018-LRR |
| vs. | | |
| IOWA STATE GOVERNOR CULVER, UNIVERSITY OF IOWA HOSPITAL, KEN CANNON, STATE OF IOWA, SALLY TITUS, JASON SMITH, BRAD WITTROCK, JAN JOHNSON, MARY BENSON, MELISSA COPE, JENNIFER MECKLEM, BRYON KELLY, LARRY CHAMBERS, CINDY OLSON, HEATHER JOHNSON, BRENT KOEDAM, and RON SPEARS, | | ORDER |
| Defendants. | | |

A lawsuit has been commenced against you (or the entity on whose behalf you are addressed). A copy of the complaint and a copy of the corresponding order from this court are attached. This complaint has been filed in the United States District Court for the Northern District of Iowa.

Pursuant to Rule 4 of the Federal Rules of Civil Procedure, you have an obligation to cooperate in saving unnecessary costs of service of summons and complaint. Please sign the enclosed document where appropriate acknowledging receipt of the complaint and notice of this pending lawsuit and waiving formal service of summons. After signing the enclosed document, please return it to the United States Clerk's Office in the envelope provided within thirty (30) days of this date: 06/27/08                    .

I affirm that this notice and request for waiver of service of summons is being sent to you on behalf of the plaintiff, this _____ June 27_____, 2008.

s/Karen S Yorgensen
_____
Signature (Clerk's Office Official)
Northern District of Iowa

## ACKNOWLEDGMENT OF RECEIPT OF
## NOTICE OF LAWSUIT,
## and WAIVER OF SERVICE OF SUMMONS

(**Return **this** document within thirty days after _____, to the United States Clerk's Office in the envelope provided.)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

DANIEL J. SCOTT,

        Plaintiff,

vs.

IOWA STATE GOVERNOR CULVER,
UNIVERSITY OF IOWA HOSPITAL, KEN
CANNON, STATE OF IOWA, SALLY TITUS,
JASON SMITH, BRAD WITTROCK, JAN
JOHNSON, MARY BENSON, MELISSA COPE,
JENNIFER MECKLEM, BRYON KELLY, LARRY
CHAMBERS, CINDY OLSON, HEATHER
JOHNSON, BRENT KOEDAM, and RON SPEARS,

        Defendants.

No. C08-4018-LRR

ORDER

---

        I acknowledge receipt of the complaint and notice of the lawsuit in which I (or the entity on whose behalf I am addressed) have been named a defendant.  I have received and/or read the complaint accompanying this document.

        I agree to save the cost of service of a summons and an additional copy of the complaint by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4 of the Federal Rules of Civil Procedure.  I hereby waive service of summons.

        I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the service of summons.  I understand that a judgment may be entered against me (or the entity on whose behalf I am acting) if an answer or motion under Rule 12 of the Federal Rules of Civil Procedure is not served within 60 days after _____, (the date Notice, Waiver and corresponding documents were sent).

Date _____

        Signature _____
        Printed name _____
        As _____ of _____
             (Title)            (Entity)

Date _____

        Signature _____
        Printed name _____
        As _____ of _____
             (Title)            (Entity)

Date _____     Signature _____
                         Printed name _____
                         As _____ of _____
                                (Title)            (Entity)

Date _____     Signature _____
                         Printed name _____
                         As _____ of _____
                                (Title)            (Entity)

Date _____     Signature _____
                         Printed name _____
                         As _____ of _____
                                (Title)            (Entity)

Date _____     Signature _____
                         Printed name _____
                         As _____ of _____
                                (Title)            (Entity)

Date _____     Signature _____
                         Printed name _____
                         As _____ of _____
                                (Title)            (Entity)

Date _____     Signature _____
                         Printed name _____
                         As _____ of _____
                                (Title)            (Entity)

Date _____     Signature _____
                         Printed name _____
                         As _____ of _____
                                (Title)            (Entity)

Date _____     Signature _____
                         Printed name _____
                         As _____ of _____
                                (Title)            (Entity)

Date _____     Signature _____
                         Printed name _____
                         As _____ of _____
                                (Title)            (Entity)

<u>**Address Form**</u>

Case Number: C08-4018-LRR          Date: June 26, 2008

To:     Clerk of Court
RE:    Service on Named Defendants

          Below, please find the known (or likely) addresses for the following persons/entities who have been named as defendants to this action:

Defendant:    **Mary Benson**
              **Civil Commitment Unit for Sexual Offenders**
              **Cherokee Mental Health Institute**
              **1251 West Cedar Loop**
              **Box 6**
              **Cherokee, Iowa 51012**

Defendant:    **Larry Chambers**
              **Civil Commitment Unit for Sexual Offenders**
              **Cherokee Mental Health Institute**
              **1251 West Cedar Loop**
              **Box 6**
              **Cherokee, Iowa 51012**