# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

DANIEL J. SCOTT,

        Plaintiff,

vs.

MARY BENSON and LARRY
CHAMBERS,

        Defendant.

No. 08-CV-4018-LRR

**ORDER**

_____

## *TABLE OF CONTENTS*

*I.*     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*    *RELEVANT PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . *2*

*III.*   *SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*IV.*   *STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*V.*     *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *A.*     *Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *B.*     *Plaintiff's General Health* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *C.*     *Plaintiff Develops Ulcers* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
        *1.*     *Plaintiff develops an ulcer on his lower left leg* . . . . . . . . . . *5*
        *2.*     *Plaintiff develops an ulcer on his scrotum* . . . . . . . . . . . . . *5*
            *a.*     *Scrotal ulcer in November of 2007* . . . . . . . . . . . . . *5*
            *b.*     *Examination in December of 2007* . . . . . . . . . . . . . . *6*
            *c.*     *Condition in January of 2008* . . . . . . . . . . . . . . . . . . *6*
    *D.*     *Facilities at CCUSO* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*

*VI.*   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
    *A.*     *Overview of Civil Rights Claims Under 42 U.S.C. § 1983* . . . . . . *11*
    *B.*     *Overview of Eighth Amendment Claims* . . . . . . . . . . . . . . . . . . *12*
    *C.*     *Medical Needs* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *14*
    *D.*     *Access to Facilities* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *17*
        *1.*     *Fourteenth Amendment* . . . . . . . . . . . . . . . . . . . . . . . . *18*
        *2.*     *ADA* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *19*

    *C.*      *Qualified Immunity* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**

**VII.**  **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**

## *I. INTRODUCTION*

The matter before the court is the Motion for Summary Judgment ("Motion") (docket no. 22), filed by Defendants Mary Benson and Larry Chambers.

## *II. RELEVANT PROCEDURAL BACKGROUND*

On February 25, 2008, Plaintiff Daniel J. Scott initiated the instant action. Plaintiff alleged that Iowa State Governor Culver, the University of Iowa Hospitals and Clinics, Ken Cannon, the State of Iowa, Sally Titus, Jason Smith, Brad Wittrock, Janne Johnson, Mary Benson, Melissa Cope, Jennifer Mecklem, Bryon Kelly, Larry Chambers, Cindy Olson, Heather Johnson, Brent Koedam and Ron Spears violated his rights under the Eighth Amendment to the United States Constitution. Plaintiff seeks relief for these alleged violations pursuant to 42 U.S.C. § 1983.

On June 27, 2008, the undersigned issued an Initial Review Order (docket no. 7-1) that dismissed fifteen of the seventeen named defendants. As a result, the only remaining Defendants are Benson and Chambers. The Initial Review Order also dismissed Plaintiff's claims for alleged violations that occurred at times other than the following: (1) from November 21, 2007 until approximately January 11, 2008; and (2) from February 8, 2008 until March 15, 2008. The Initial Review Order directed the Clerk of Court to file the Complaint (docket no. 8).

On April 21, 2009, Defendants filed the Motion. On July 16, 2009, Plaintiff filed a pro se Resistance (docket no. 28). That same date, Plaintiff's attorney, Jeffrey M. Lipman, filed a "Motion to Withdraw as Attorney Pursuant to Iowa Rule of Professional Conduct 32:3.1" ("Motion to Withdraw") (docket no. 29). In the Motion to Withdraw, Attorney Lipman stated that he could not ethically argue that Plaintiff had a valid claim and

asked for permission to withdraw as Plaintiff's attorney. However, Attorney Lipman also asked that, if the court denied the Motion, he "be allowed to represent [Plaintiff] in any further proceedings before the [c]ourt." Brief in Support of Motion to Withdraw (docket no. 29-1), at 5. On July 17, 2009, Defendants filed a Reply (docket no. 31) in support of the Motion.

On August 5, 2009, United States Magistrate Judge Jon S. Scoles denied the Motion to Withdraw. Order (docket no. 32). Judge Scoles also addressed Plaintiff's pro se Resistance and noted that, although a party is not entitled to hybrid representation, the court would consider the Resistance in its resolution of the Motion.

## III. SUBJECT MATTER JURISDICTION

The court has subject matter jurisdiction over the instant action. 28 U.S.C. § 1343; *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").

## IV. STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of fact exists "when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A 'material' fact is one 'that might affect the outcome of the suit under the governing law[.]'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson*, 477 U.S. at 248). The court must "view the evidence and the inferences that may reasonably be drawn from the evidence in the light most favorable to the nonmoving party." *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am.*, 450 F.3d 816, 820 (8th Cir. 2006) (citation omitted).

## *V. FACTS*

Viewing the facts in the light most favorable to the non-moving party, Plaintiff, and affording him all reasonable inferences, the undisputed facts are:

### *A. Parties*

Plaintiff is a patient at the Civil Commitment Unit for Sexual Offenders ("CCUSO") in Cherokee, Iowa. Defendant Benson is an advanced registered nurse practitioner ("ARNP") employed by CCUSO. Defendant Chambers is a treatment program supervisor employed by CCUSO.

### *B. Plaintiff's General Health*

Plaintiff has diabetes. He does not adhere to his recommended dietary or self-care regimen. Because Plaintiff does not properly manage his diabetes, he is prone to infections.

Plaintiff's left leg is amputated below the knee. He sits with the lower portion of his left leg beneath him "throughout the day." Defendants' Appendix ("Def. App'x") (docket no. 22-3), at 13. Plaintiff has a prosthetic leg that he occasionally wears. When Plaintiff does not wear his prosthetic leg, he uses a motorized wheelchair.

CCUSO patients "who require medical care may request a visit from an ARNP." *Id.* at 6. Defendant Benson "routinely offer[ed] to visit [Plaintiff] and other patients [in] the wards." *Id.* at 3. However, due to Plaintiff's "volatility," ward staff typically alerted Defendant Benson if Plaintiff was willing to see her. *Id.* Plaintiff often forbade Defendant Benson from treating him. Although Defendant Benson offered Plaintiff "advice on self-care for his wounds," he often disregarded her advice. *Id.* at 4.

### *C. Plaintiff Develops Ulcers*

Plaintiff developed ulcers on his left leg and scrotum. Ulcers can be treated "by keeping them free of pressure[] and applying moist to dry dressings on them to protect them during the healing process." *Id.* at 3. Typically, ulcers are not life-threatening.

### 1. Plaintiff develops an ulcer on his lower left leg

In June of 2007, Plaintiff reported an ulcer on the stump of his left leg. Plaintiff refused to allow CCUSO staff to examine this wound. Defendant Benson suggested that Plaintiff refrain from sitting on his stump. Defendant Benson believed that such posture "would be the best thing [Plaintiff] could do for it." *Id.* at 13. Plaintiff informed Defendant Benson that "he must tuck it under" and "that he cannot ride around in his wheelchair with the stump hanging down." *Id.* Defendant Benson noted that Plaintiff's noncompliance would be an impediment to treatment of the wound on his left leg.

### 2. Plaintiff develops an ulcer on his scrotum

At some point after June of 2007, Plaintiff developed an ulcer on his scrotum. In Defendant Benson's patient notes from September 29, 2007, Defendant Benson wrote that Plaintiff continued to "do self care to his ulcerated areas—scrotum [and left] stump pressure ulcer." *Id.*

### a. Scrotal ulcer in November of 2007

On November 21, 2007, Plaintiff complained about the ulcer on his scrotum to members of CCUSO's staff. A member of CCUSO's staff suggested that Plaintiff "should have someone [on] the medical staff look [at the] wound." *Id.* at 15. Plaintiff indicated that he "would wait [un]til after [the] weekend for 'Benson' to look at" the ulcer on his scrotum. *Id.*

Later that day, however, Plaintiff allowed two CCUSO staff members to examine the wound on his scrotum. They noted that Plaintiff had "a noticeable pocket of infection on his [right] testicle." *Id.* Plaintiff informed the CCUSO staff members that he "squeezes puss out of it on a daily basis." *Id.* A member of the CCUSO staff informed Plaintiff that he would contact "the nurse" about Plaintiff's condition. *Id.*

Plaintiff's patient care log states that CCUSO staff notified Defendant Benson of Plaintiff's condition on November 21, 2007 at 8:45 p.m. Defendant Benson was not at

work at that time because it was the Wednesday before Thanksgiving and she was on leave. Defendant Benson returned to work on Monday, November 26, 2007. Defendant Benson was away from work on the following days: November 22-25 and 29, 2007, December 1, 2, 8, 9, 11, 12, 15, 16, 22, 23, 25, 26, 29 and 30, 2007 and January 1, 2, 5, 6 and 10, 2008.

### b.     Examination in December of 2007

On December 17, 2007, Defendant Benson examined the ulcer on Plaintiff's left leg. The examination did not include an examination of Plaintiff's scrotal ulcer. Defendant Benson's medical notes state that Plaintiff "will continue wound care as he has been doing by himself" and would "notify [her] of any signs or symptoms of infection, i.e., fever, pustular drainage, increase in the wound, or deterioration in the wound base." *Id.* at 17. Defendant Benson's notes also reflect that she "thanked him for letting [her] see the ulcer as he ha[d] refused care of it for the past several months." *Id.* at 17. Defendant Benson also "encouraged him to continue to notify [her] if there are any problems noted." *Id.*

Defendant Benson's notes from December 17 do not mention the scrotal ulcer. When she takes notes about a patient, Defendant Benson's general practice is "to make a note of each condition for which [she] evaluate[s] and treat[s] a client." *Id.* at 4. Further, "[c]onsistent with standards of practice, [Defendant Benson] do[es] not conduct genital examinations unless there is a specific indication to do so." *Id.* Defendant Benson believes that she "provided [Plaintiff] with adequate care to the extent he would allow [her] to do so." *Id.*

### c.     Condition in January of 2008

On January 13, 2008, Plaintiff developed a temperature of 101.8 degrees and complained of aches and pains. A member of CCUSO's staff informed ARNP Janne Johnson ("Nurse Johnson") that Plaintiff "was having some sore areas on his testicles

which he felt were becoming infected." *Id.* at 19.

Plaintiff reported to the clinic to see Nurse Johnson. However, when Nurse Johnson arrived to conduct the blood withdrawal, Plaintiff refused to allow Nurse Johnson to perform the blood withdrawal and refused medical services. Nurse Johnson noted that CCUSO staff "would continue to monitor [Plaintiff] closely over the course of the evening and obtain vital signs at least two more times in the shift," and that CCUSO staff should notify Nurse Johnson "if there was any evidence of change for the worse." *Id.* Nurse Johnson noted that Plaintiff "has continued to refuse the majority of his medications including those[] which are ordered for the treatment of his Diabetes." *Id.*

On January 14, 2008, Plaintiff allowed Nurse Johnson to examine him. Nurse Johnson noted "what appeared to be an older lesion [. . .] on the right testicle." *Id.* at 20. Plaintiff informed Nurse Johnson that this ulcer "had been present for about three months and that he had been draining it himself every day." *Id.* Plaintiff related that "a new area was very sore and tender on the posterior portion of the left testicle." *Id.* Nurse Johnson noted that the left testicle "was very reddened and appeared to have edema." *Id.* Nurse Johnson suggested that they transfer Plaintiff to the Cherokee Regional Medical Center ("CRMC") for "further evaluation as the likelihood of IV antibiotics was quite possible." *Id.*

On January 15, 2008, Plaintiff was transferred to CRMC. Later that day, Dr. Stephen J. Veit, M.D., called Nurse Benson from CRMC and told her that Plaintiff "needed to go to University of Iowa Hospitals and Clinics [in] Iowa City because [his] Diabetes Mellitus was out of control" and because "he had a scrotal abscess which had been drained [twice] in the past." *Id.* at 20. Plaintiff was transported to the UIHC by ambulance.

### D. Facilities at CCUSO

Plaintiff used to reside in a single room on "South 8" of CCUSO's facility. *Id.* at

7. At some point prior to March 15, 2008, members of CCUSO's staff decided to move him to a shared room on "South 9" because "he was targeting and harassing a patient with a lower functioning level than his own." *Id.* Plaintiff objected to this transfer "because he no longer had a single room." *Id.* Plaintiff also complained about the adequacy of the facilities available to him on South 9.

South 9 has two bathroom areas available for patients. One bathroom is 225 square feet. The other is 77 square feet. These facilities "comply with the requirements set by the Department of Inspections and Appeals for Residential Care Facilities with respect to the toileting facilities available." *Id.* Plaintiff can maneuver his wheelchair into the restrooms on South 9.

On March 15, 2008, Plaintiff spoke with Defendant Chambers about using the restroom. TPS Chambers completed an incident report in which he noted the following:

> [Plaintiff] informed me that he was going to use the restroom and that he was having difficulty getting to the toilet, he stated to me that he would be crawling to the toilet; I offered my assistance to [Plaintiff] at this time. [Plaintiff] continued to state that he would be crawling across the floor to the toilet, I continued to offer my assistance to help him get to the toilet[, but] he did not respond, he later maneuvered his motorized wheelchair to approximately the door of the restroom and crawled to the toilet, I noted that approximately one inch of space on either side of the door when the [wheelchair] was parked.

*Id.* at 5.

On March 16, 2008, Patient Service Specialist Larry Small ("PSS Small") was monitoring Plaintiff and other CCUSO patients through a camera. PSS Small observed Plaintiff cutting the hair of another patient, J.H. PSS Small "was surprised to see that [Plaintiff] was standing up and walking around the chair that [J.H.] was sitting in." *Id.* at 23. PSS Small noticed that Plaintiff was wearing a prosthetic leg. PSS Small had never before observed Plaintiff wear his prosthetic leg.

On March 18, 2008, CCUSO administrator Dr. Jason Smith, Psy.D. offered some options to Plaintiff to make use of the CCUSO facilities. Specifically, Dr. Smith suggested that Plaintiff could "continue using the bathroom on South 9 and go to South 3 for showers." *Id.* at 24. Alternatively, Dr. Smith suggested that Plaintiff "relocate to South 6 in a group room and use the bathroom facilities on that unit." *Id.* CCUSO has always had a shower bench available for Plaintiff's use. On June 19, 2008, however, it purchased a heavy-duty shower bench with a greater weight capacity.

On March 26, 2008, Patient Service Specialist R. Loucks ("PSS Loucks") overheard a telephone conversation involving Plaintiff. PSS Loucks heard Plaintiff say that CCUSO "offered [him] a group room on another unit with adequate facilities." *Id.* at 25.

## VI. ANALYSIS

Defendants argue the court should grant the Motion and dismiss Plaintiff's § 1983 action. Plaintiff's claim is comprised of two parts: (1) a claim against Defendant Benson for deliberate indifference to Plaintiff's scrotal ulcer; and (2) a claim against Defendant Chambers for deliberate indifference to Plaintiff's access to CCUSO's restroom facilities.[1]

Because Plaintiff is a psychiatric patient, his claims arise under the Fourteenth Amendment rather than the Eighth Amendment: "[When] an involuntarily committed psychiatric patient is confined for treatment rather than incarcerated for the purpose of punishment following conviction, the Eighth Amendment does not apply." *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004) (citing *Neely v. Feinstein*, 50 F.3d 1502, 1508 (9th Cir. 1995); *Youngberg v. Romeo*, 457 U.S. 307, 324-25 (1982)). Instead, "[t]he rights of patients in psychiatric hospitals more appropriately arise under the Fourteenth Amendment." *Id.* (citing *Neely*, 50 F.3d at 1508). The Eighth Circuit Court of Appeals

_____

[1] Plaintiff also asks the court to reconsider certain matters previously dismissed in the Initial Review Order. The court denies this request.

reviews a civilly committed person's § 1983 deliberate indifference claim in the same manner that it reviews the liberty interests of pretrial detainees. *See Serna v. Goodno*, 567 F.3d 944, 948 (8th Cir. 2009) (reasoning that "confinement in a state institution raise[s] concerns similar to those raised by the housing of pretrial detainees, such as the legitimate institutional interest in the safety and security of guards and other individuals in the facility, order within the facility, and the efficiency of the facility's operations" (internal quotation marks omitted)). Therefore, in the instant analysis, the court analyzes the law on Fourteenth Amendment claims by pretrial detainees in addition to claims raised by civilly committed individuals.

Although a court analyzes a civilly committed person's § 1983 claim under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment, "'[t]his makes little difference as a practical matter.'" *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009) (quoting *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007)). This is so because "'[p]retrial detainees [and civilly committed individuals] are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment.'" *Id.* at 579-80 (quoting *Kahle*, 477 F.3d at 550). In other words, the deliberate indifference standard of the Eighth Amendment is applicable to civilly committed patients challenging conditions of confinement under the Due Process Clause of the Fourteenth Amendment. *Senty-Haugen v. Goodno*, 462 F.3d 876, 889 (8th Cir. 2006); *see also Rivera v. Marcoantonio*, 153 F. App'x 857, 859 n.1 (3d Cir. 2005) (holding Eighth Amendment standards are applicable to civilly committed patient's claim under the Due Process Clause of the Fourteenth Amendment); *Ambrose v. Puckett*, 198 F. App'x 537, 540 (7th Cir. 2006) ("'[W]e have found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) without differentiation.'") (quoting *Board v. Farnham*, 394 F.3d 469, 477-78 (7th Cir. 2005)). Accordingly, the

court turns to consider Plaintiff's § 1983 claim in the same way it construes Eighth Amendment claims.

### A. Overview of Civil Rights Claims Under 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory [. . .] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Congress designed 42 U.S.C. § 1983 to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). However, § 1983 itself does not provide any substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "One cannot go into court and claim a 'violation of §1983,' for § 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (§ 1983 "merely provides a method for vindicating federal rights elsewhere conferred.") (internal quotation marks omitted); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means 42 U.S.C. § 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.).

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *West*

*v. Atkins*, 487 U.S. 42, 48 (1988).

## B. Overview of Eighth Amendment Claims

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII. The treatment that a prisoner receives in prison and the conditions of his confinement are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *Helling v. McKinney*, 509 U.S. 25, 31-32 (1993). In its prohibition of cruel and unusual punishment, the Eighth Amendment places a duty on jail and prison officials to provide inmates with necessary medical attention. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Weaver v. Clark*, 45 F.3d 1253, 1255 (8th Cir. 1995). In this context, a prison official violates the Eighth Amendment by being deliberately indifferent either to a prisoner's existing serious medical needs or to conditions posing a substantial risk of serious future harm. *Weaver*, 45 F.3d at 1255 (comparing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (existing medical needs) with *Helling*, 509 U.S. at 33-34 (risk of future harm to health)).

An Eighth Amendment violation occurs when two requirements are met: (1) "the deprivation alleged must be, objectively, 'sufficiently serious,'" and (2) the "prison official must be, as a subjective state of mind, deliberately indifferent to the prisoner's health or safety." *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled on other grounds) (citations omitted); *see also Helling*, 509 U.S. at 32; *Estelle*, 429 U.S. at 106; *Jolly v. Knudson*, 205 F.3d 1094, 1096 (8th Cir. 2000); *Williams v. Delo*, 49 F.3d 442, 445-47 (8th Cir. 1995). In the context of a prisoner's claim of inadequate medical care, society does not expect that prisoners will have unqualified access to health care. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Consequently, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* (citing *Estelle*, 429 U.S. at 103-04); *see also Wilson*, 501 U.S. at 298.

To constitute an objectively serious medical need or a deprivation of that need, the need or the deprivation either must be supported by medical evidence or must be so obvious that a layperson would recognize the need for a doctor's attention. *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995); *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991); *see e.g., Beyerbach*, 49 F.3d at 1326-27 (insufficient evidence of objective seriousness when there is no medical evidence that delay in treatment produced any harm); *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (insufficient evidence of serious medical need when the medical need claimed is based on bare assertion of inmate). The objective portion of the deliberate indifference standard requires a showing of verifiable medical evidence that a defendant ignored an acute or escalating situation, or that delays adversely affected the prognosis given the type of medical condition present in the case. *See Dulany v. Carnahan*, 132 F.3d 1234, 1243 (8th Cir. 1997) (citing *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) and *Beyerbach*, 49 F.3d at 1326)); *see also O'Neal v. White*, No. 98-2235, 2009 WL 960938, *1 (8th Cir. July 12, 2000) (citing *Crowley*, 109 F.3d at 502).

To meet the second requirement, the subjective component of an Eighth Amendment claim, a prison or jail official must have a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 297-303; *Hudson*, 503 U.S. at 8. In a medical needs claim, that state of mind is one of "deliberate indifference" to inmate health. *Farmer*, 511 U.S. at 838-39; *Helling*, 509 U.S. at 32; *Wilson*, 501 U.S. at 302-03; *Estelle*, 429 U.S. at 106. Regarding the meaning of the term "deliberate indifference," the United States Supreme Court has explained:

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also

> draw the inference. . . . The Eighth Amendment does not
> outlaw cruel and unusual "conditions"; it outlaws cruel and
> unusual "punishments."

*Farmer*, 511 U.S. at 837. Thus, to establish the second requirement, "deliberate indifference," a plaintiff must assert facts showing the defendant actually knew of and disregarded a substantial risk of serious harm to his or her health or safety. *Id.* at 840-47; *Helling*, 509 U.S. at 32.

Medical treatment that displays "deliberate indifference" violates the Eighth Amendment "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to the medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05; *see also Foulks v. Cole County*, 991 F.2d 454, 456-57 (8th Cir. 1993). Negligent acts by prison officials, however, are not actionable under § 1983. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986); *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986); *Estelle*, 429 U.S. at 106; *Taylor v. Bowers*, 966 F.2d 417, 421 (8th Cir. 1992) (overruled on other grounds). Further, an inmate's disagreement or displeasure with his course of medical treatment is not actionable under § 1983. *Dulany*, 132 F.3d at 1240-44; *Bellecourt v. United States*, 994 F.2d 427, 431 (8th Cir. 1993); *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993) (per curiam); *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir. 1991); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990); *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990).

### C. Medical Needs

First, the court considers Plaintiff's deliberate indifference claim with respect to medical care for his scrotal ulcer. The court assumes without deciding that Plaintiff's scrotal ulcer consitutes a serious medical condition. Accordingly, the court turns to consider whether Defendant Benson was deliberately indifferent to Plaintiff's condition.

To show deliberate indifference, Plaintiff must demonstrate "'that the prison

14

officials actually knew of but deliberately disregarded [his] needs.'" *Jolly*, 205 F.3d at 1096 (quoting *Dulany*, 132 F.3d at 1239). "'Whether a prison's medical staff deliberately disregarded the needs of an inmate is a factually-intensive inquiry.'" *McRaven*, 577 F.3d at 982 (quoting *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1118 (8th Cir. 2007)). "'The plaintiff-inmate must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded the inmate's needs by administering an inadequate treatment.'" *Id.* (quoting *Meuir*, 487 F.3d at 1118). "'Intentional delay in providing medical treatment shows deliberate disregard if a reasonable person would know that the inmate requires medical attention or the actions of the officers are so dangerous that a knowledge of the risk may be presumed.'" *Id.* at 980 (quoting *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)).

Plaintiff has failed to show that Defendant Benson deliberately disregarded his scrotal ulcer. Plaintiff's scrotal ulcer was first mentioned in Defendant Benson's notes on September 29, 2007. At that time, Plaintiff discussed both his scrotal and leg ulcers with Defendant Benson. However, he insisted on continuing his "self care" regimen and refused care from CCUSO's medical staff. In November of 2007, Plaintiff complained about his scrotal ulcer to some of CCUSO's staff, but not to Defendant Benson, since she was away from work for the Thanksgiving holiday.[2] The patient log suggests that Defendant Benson was notified that Plaintiff was complaining about his scrotal ulcer; however, there is no record that Defendant Benson conferred with Plaintiff about his condition or examined him when she returned to CCUSO. In other words, Defendant Benson was unaware that Plaintiff's scrotal ulcer had become problematic. Further, Plaintiff's medical records show that Plaintiff continued to *refuse* medical treatment for his

---

[2] Plaintiff takes issue with Defendant Benson's absence from work. That information is irrelevant to the instant analysis. Plaintiff could have sought care from another ARNP from CCUSO during any of Defendant Benson's absences.

ulcers in and after November of 2007.

Plaintiff had ample opportunity to seek treatment from Defendant Benson after November of 2007. Defendant Benson consistently offered her services to Plaintiff, which he refused. In the event that Plaintiff needed medical care, CCUSO staff from Plaintiff's ward would have alerted Defendant Benson that Plaintiff was making that request. However, she never received this notice. Defendant Benson noted Plaintiff's consistent refusal of medical care throughout her records. After the single occasion that Plaintiff allowed Defendant Benson to examine his leg ulcer in December of 2007, she thanked him for allowing her to examine him because he rarely allowed such an examination. During that examination, Plaintiff never mentioned his scrotal ulcer.[3]

The court finds that Defendant Benson was not deliberately indifferent to Plaintiff's scrotal ulcer. Plaintiff refused medical treatment for his scrotal ulcer and now argues that this consitutes a deliberate disregard of that condition. Plaintiff cannot have it both ways. Defendant Benson was diligent in her efforts to examine Plaintiff. The fact Plaintiff refused her care does not give rise to deliberate indifference. *See Logan v. Clarke*, 119 F.3d 647, 649-50 (8th Cir. 1997) (holding that an inmate's refusal of medical care shows that medical professionals were not consciously disregarding his need). Plaintiff's scrotal ulcer was not in a readily observable location and it is not Defendant Benson's practice to conduct genital examinations without a specific reason to do so. Plaintiff has failed to establish the "substantial evidentiary threshold" necessary to show deliberate indifference.

---

[3] In addition to other evidence in support of this argument, Defendant Benson cites a medical opinion purportedly offered by Jason Ekwena, M.D. ("Opinion") (docket no. 31-1). However, Defendant has not provided any evidence authenticating Dr. Ekwena as the author of the Opinion. Defendants note their failure to obtain an "authentication declaration" for the Opinion in their Reply and stated that they would supplement the Reply with the proper authentication declaration. Reply at 1. To date, however, the court has not received any authentication declaration for the Opinion. Accordingly, the court does not rely on the Opinion in making its findings.

*McRaven*, 577 F.3d at 980. There is no evidence that Defendant Benson intentionally delayed treatment. If Plaintiff would have allowed her to treat him, Defendant Benson would have treated him.[4] Once Plaintiff finally requested medical attention for his scrotal ulcer, it was promptly provided.

At best, Plaintiff has a negligence claim against Defendant Benson. However, to show deliberate indifference, a plaintiff "'must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Phillips v. Jasper County Jail*, 437 F.3d 791, 795 (8th Cir. 2006) (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)); *see also McRaven*, 577 F.3d at 982 ("Negligent misdiagnosis does not create a cognizable claim under § 1983.").

In light of the foregoing analysis, the court finds that Defendant Benson was not deliberately indifferent to Plaintiff's medical needs. Accordingly, the court shall grant the Motion to the extent it seeks to dismiss Plaintiff's claim against Defendant Benson.

## D. Access to Facilities

In the Complaint, Plaintiff alleges that Defendant Chambers was deliberately indifferent to his need to access CCUSO's restroom facilities. Specifically, Plaintiff argues

---

[4] Plaintiff explains his failure to communicate his needs to CCUSO's medical staff in his Resistance. Plaintiff argues that he did not follow Defendant Benson's advice due to his lack of trust in CCUSO's medical staff. Plaintiff also argues that he disagreed with Defendant Benson's diagnosis of his condition. Plaintiff indicates that he is angry that Defendant Benson suggested that Plaintiff should listen to her advice because she has medical training. Plaintiff insists that this behavior caused him to reject all medical advice from CCUSO staff. Plaintiff also argues that he could not rely on care offered by Nurse Johnson because Nurse Johnson killed his best friend. The court does not consider these arguments in the instant analysis because they are not supported by any evidence. The court also notes that Defendant's distrust in medical staff, even if supported by evidence, would not defeat Defendant Benson's argument. Disagreement with a medical professional's diagnosis does not give rise to a constitutional claim for deliberate indifference. *Scanlon v. Corr. Med. Servs.*, 126 F. App'x 761, 762 (8th Cir. 2005).

that, while on South 9, Defendant Chambers forbade him from using the staff restroom. Plaintiff argues that the restroom on South 9 that was available to him was not as wheelchair accessible as the staff restroom. Plaintiff claims that he had to leave his wheelchair and crawl across the restroom floor while Defendant Chambers observed. Plaintiff argues that this claim violates his rights under the Fourteenth Amendment and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*

### 1. *Fourteenth Amendment*

Plaintiff's Fourteenth Amendment claim for inadequate access to proper, sanitary facilities is subject to the same two-pronged analysis set forth in Section VI.B. That is, to survive summary judgment, Plaintiff must show that his access to proper, sanitary restroom facilities on South 9 is a "fundamental right subject to due process protection" and that Defendant Chambers was deliberately indifferent to Plaintiff's welfare with respect to his access to those restroom facilities. *Revels*, 382 F.3d at 876.

The court assumes without deciding that Plaintiff's access to proper, sanitary facilities at CCUSO is a fundamental right subject to due process protection. *See id.* (assuming that "opportunity to urinate, under certain conditions," is a protected liberty interest under Fourteenth Amendment). Nevertheless, Plaintiff's claim fails because Defendant Chambers was not deliberately indifferent to Plaintiff's welfare.

To show deliberate indifference, Plaintiff must demonstrate "'that the prison officials actually knew of but deliberately disregarded [his] needs.'" *Jolly*, 205 F.3d at 1096 (quoting *Dulany*, 132 F.3d at 1239). Defendant Chambers did not disregard Plaintiff's needs. Rather, after Plaintiff expressed difficulty in accessing the toilet, Defendant Chambers offered to assist Plaintiff to the toilet, but Plaintiff refused his help. The facts clearly show that Defendant Chambers was not deliberately indifferent to Plaintiff's ability to access the toilet. Plaintiff cannot seek relief for his alleged inability to access restroom facilities when he refused Defendant Chambers's offer to assist. The

court also notes that Plaintiff could have accessed the toilet on South 9 with his wheelchair because there was adequate clearance in the doorway. Plaintiff also would have been able to avoid crawling on the floor of the restroom if he had worn his prosthetic leg, which he willingly wore the following day when he cut another inmate's hair.

Further, the facts show that CCUSO administrators have taken great pains to make sanitary, proper facilities available to Plaintiff. The facilities on South 9 comply with the dimensions described in Plaintiff's Resistance. Plaintiff can maneuver his wheelchair into both restrooms on South 9. CCUSO administrators have offered Plaintiff his choice of facilities. And, although CCUSO always had a shower bench available for Plaintiff, on June 19, 2008, it purchased a heavy-duty shower bench with a greater weight capacity.

### 2. ADA

Plaintiff devotes a great deal of his Resistance to his rights under the ADA. The Complaint does not appear to state a claim under the ADA. However, for purposes of the instant analysis, the court assumes that the Complaint properly states an ADA claim against Defendant Chambers. To prevail on an ADA claim, Plaintiff must show that he is a qualified individual with a disability under the ADA. *Kutrip v. City of St. Louis*, 329 F. App'x 683, 684 (8th Cir. 2009) (citing *Gorman v. Bartch*, 152 F.3d 907, 911-12 (8th Cir. 1998)); *see also* 42 U.S.C. §§ 12102(1) & 12111(8) (defining "disability" and "qualified individual"). Plaintiff also must prove that he was denied certain benefits or services of CCUSO because of his disability. *Id.* (citing *Gorman*, 152 F.3d at 911-12). The court assumes without deciding that Plaintiff is a qualified individual with a disability under the ADA. However, for the reasons previously stated, Plaintiff cannot show that he was denied the benefit of any facilities or services at CCUSO because of his disability. Defendant Chambers tried to assist Plaintiff's access to toilet facilities. Additionally, the court notes that CCUSO has taken great pains to enable Plaintiff's use of CCUSO's facilities, including shower facilities, and that Plaintiff has admitted that CCUSO offered

to make adequate facilities available to him. The size of both restrooms on South 9 comply with the standards that Plaintiff demands in his Resistance.

In summary, Plaintiff cannot show that he was denied the use or benefit of any facilities at CCUSO due to his disability. Accordingly, the court shall grant the Motion to the extent it asks the court to dismiss Defendant Chambers from the instant action.

### C. Qualified Immunity

Alternatively, Defendants argue that Plaintiff's claims fail under the doctrine of qualified immunity. "'In a § 1983 action, state actors may be entitled to qualified immunity.'" *McRaven*, 577 F.3d at 980 (quoting *Riehm v. Engelking*, 538 F.3d 952, 962 (8th Cir. 2008)). "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted). For Plaintiff to overcome a qualified immunity defense, he must show: "'(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.'" *Id.* (quoting *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)).

Even when it views the facts in the light most favorable to Plaintiff, the court finds that Plaintiff has failed to demonstrate any deprivation of his constitutional or statutory rights. Accordingly, the court shall also grant the Motion to the extent it seeks summary judgment under the doctrine of qualified immunity.

### VII. CONCLUSION

For the foregoing reasons, the Motion (docket no. 22) is **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and **CLOSE THIS CASE**.

**IT IS SO ORDERED.**

**DATED** this 4th day of January, 2010.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA